FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

2014 JAN -8 PM 2: 40

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

| | | |
|---|---|---|
| BOARD OF REGENTS, | § | |
| THE UNIVERSITY OF TEXAS SYSTEM, | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CAUSE NO. A-11-CA-125-LY |
| | § | |
| TOWER CAR WASH, INC, D/B/A | § | |
| TOWER EXPRESS CAR WASH, ROBERT | § | |
| E. TESCH, AND TESCH & ASSOCIATES, INC., | § | |
| DEFENDANTS. | § | |

## FINAL JUDGMENT INCORPORATING
## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the court is the above styled and numbered trademark-infringement action. On May

17, 2012, the court rendered summary judgment in favor of Plaintiff Board of Regents, The

University of Texas System (the "University") and against Defendants Tower Car Wash, Inc., d/b/a

Tower Express Car Wash, Robert E. Tesch, and Tesch & Associates, Inc.,[1] as to liability only on

each of the University's federal Lanham Act[2] claims and Texas state-law infringement claims.

Specifically, the court concluded that Tesch's actions including: (1) building a 60-foot replica of

the University of Texas tower ("tower replica") at the Tower Express Car Wash in Cedar Park,

Texas; (2) using marks that include an abstract of the University tower in the color orange as the

"T" in the Tower Express Car Wash logo displayed on the car wash's website and in promotional

materials; and (3) using the tower replica and logo in commerce, constitute federal and state

trademark-infringement of the University's federally and state-registered tower marks. *See* 15

---

[1] Because Defendants' interests do not diverge, they will be referred to herein collectively
as "Tesch."

[2] *See* 15 U.S.C. §§ 1051-1141n.

U.S.C. §§ 1114(1)(a); Tex. Bus. & Com. Code Ann. § 16.26 (West 2011).  Specifically the court ruled that the University had established that there was a likelihood of confusion that the University is the sponsor of, affiliated with, or connected to the car wash.  Further, Tesch's actions constitute unfair competition with the University. *See* 15 U.S.C. § 1125(a).  Additionally, the court concluded that the actions of Tesch constitute dilution of the University's marks.  *See* Tex. Bus. & Com. Code Ann. § 16.29 (West 2011).  Finally, the court concluded that Tesch has been unjustly enriched at the expense of the University.

**Remedies**

The University seeks remedies of injunctive relief, an award of monetary damages in the form of a reasonable royalty, destruction of the tower replica, attorney's fees, and costs.  On July 9, 2012, the parties filed a joint stipulation by which each side included evidence to be considered by the court in determining remedies.[3]  Having carefully considered the pleadings, the joint stipulation and exhibits, the arguments of counsel, and the applicable law, the court concludes that the University is entitled to injunctive relief, monetary damages in the form of a royalty, and costs.[4]

Federal courts may "grant injunctions according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a

---

[3] Following rendition of the summary-judgment order, at a hearing regarding remedies at which all parties were represented by counsel, the parties announced that they were unable to reach an agreement regarding appropriate remedies for Tesch's actions.  On August 20, 2012, the court held a conference regarding the parties' stipulation at which all parties were represented by counsel. At the August 20 conference, the parties explained to the court that the joint stipulation, which included evidence proffered by each side, represents the parties' agreement as to all admissible facts necessary for the court to consider in assessing damages.

[4] All findings of fact contained herein that are more appropriately considered conclusions of law are to be so deemed.  Likewise, any conclusion of law more appropriately considered a finding of fact shall be so deemed.

mark registered in the Patent or Trademark office." 15 U.S.C. § 1116. Also, once infringement has

been established the plaintiff is entitled, subject to the principles of equity,

> to recover: (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the cost of the action. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. The court in exceptional circumstances may award reasonable attorney fees to the prevailing party.

*See* 15 U.S.C. § 1117(a). The goal behind remedies in a trademark-infringement action is to

achieve equity among the parties. *See Seatrax, Inc. v. Sonbeck Int'l, Inc.*, 200 F.3d 358, 369 (5th

Cir. 2000). Monetary damages are to make acts unprofitable and not to punish. In fashioning the

appropriate remedy, a legal determination of liability is not dispositive. *Id.* Further, no particular

category, whether it be profits, damages, or attorney's fees is required or, for that matter, prohibited

in fashioning a remedy designed to redress the harm done. Because each case presents a different

set of facts and circumstances, a case-by-case evaluation is warranted to determine the nature of the

infringing conduct and its adverse effects, if any, on the plaintiff. *See Seatrax*, 200 F.3d at 369.

### *Injunctive relief*

The University requests that the court render a permanent injunction that all defendants,

their officers, agents, servants, employees, and attorneys, and other persons who are in active

concert or participation with any of them, be permanently enjoined and restrained from using the

tower replica, a logo depicting the University tower, an orange lighting scheme in or on any new

logo or tower structure, and any other mark or tower structure that is confusingly similar to or likely

to cause dilution of the University's tower or the University's tower marks, and from any attempt

to retain any part of the goodwill misappropriated from the University.[5] *See* 15 U.S.C. § 1116.

A plaintiff seeking a permanent injunction must satisfy a four-factor test, demonstrating:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Abraham v. Alpha Chi Omega*, 708 F.3d 614, 626-27 (5th Cir. 2013) (quoting *eBay Inc. v.*

*MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).   The decision to grant or deny a permanent

injunction is grounded in principles of equity.  *eBay Inc.*, 547 U.S. at 391; *see also* 15 U.S.C.

§ 1116(a).  "An injunction alone, under appropriate circumstances, fully satisfies the equities of a

given case." *Seatrax*, 200 F.3d at 369 (citing *Bandag, Inc. v. Al Bolser's Tire Stores*, 750 F.2d 903,

919 (Fed. Cir. 1984)).

As for the first factor–what must be proved to establish the need for an injunction against

infringement–the likelihood of confusion is presumed. *Abraham*, 708 F.3d at 627.  With regard to

the second factor, "there seems little doubt that money damages are 'inadequate' to compensate [an

owner of a mark] for continuing acts of [an infringer]." *Id.* (quoting 5 McCarthy on Trademarks

and Unfair Competition § 30:2 (4th ed. 2001)).  With regard to the remaining two factors, the court

balances the equities between the parties and determines whether the public will be disserved by

an injunction.

---

[5]  Tesch's offending replica and logo, as well as the University's marks, are depicted in Attachment A to this judgment.

By summary judgment, the court held that there exists a likelihood of confusion that the University is a sponsor of, affiliated with, or somehow connected to the car wash. Therefore, injury is presumed. Additionally, as in *Abraham*, the court concludes money damages alone are inadequate to compensate the University for any continuing acts of infringement by Tesch. With regard to the remaining two factors, in balancing the equities, the court concludes that Tesch's intentional copying of several aspects of the University tower weighs in favor of the University and enjoining Tesch's use of the tower's likeness. Finally, the court concludes that the public will not be disserved by a permanent injunction.

Based on the court's determination that Tesch is liable to the University for trademark infringement and has used the University's marks "in commerce" and consideration of the evidence submitted by the parties and the four-factor test for a permanent injunction, to achieve equity among the parties, the court concludes that the University has shown that a permanent injunction is warranted. The court will render a permanent injunction enjoining Tesch from using any likeness of any type of the University's tower or the University's tower marks, for commercial endeavors, unless such endeavors are first authorized by the University.

### *Monetary relief*

The University also seeks monetary damages under the Lanham Act in the form of a reasonable royalty. *See* 15 U.S.C. § 1117(a). Any monetary award granted is to be conditioned by equitable considerations and not be punitive. An inability to show actual damages does not preclude a recovery of a reasonable royalty. *Id.* If the court finds that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion render judgment

for such sum as the court shall find to be just, according to the circumstances of the case. *See Boston Prof. Hockey Ass'n v. Dallas Cap & Emblem Mfr., Inc.*, 597 F.2d 71, 75-76 (5th Cir. 1979).

At the August 20 conference, the University abandoned its claim for damages as a portion of Tesch's profits and seeks only lost royalties, which the University asserts should be a minimum of 8% of the car wash's total sales–a royalty rate under which the University's trademarks have been otherwise licensed. *See id.*

The parties joint stipulation provides, *inter alia*, that the University has other license agreements providing 10% and 8% royalty rates.[6] The University calculates an 8% royalty to be $68,285.59, based on sales information supplied by Tesch. The court concludes that 8% represents a royalty that is similar to other licenses granted by the University and is reasonable and just according to all the facts of this case.

### Dismantle and destroy

The University also requests that the court order Tesch to "take all necessary steps to dismantle and destroy the entire" tower replica. *See* 15 U.S.C. § 1118 (under Lanham Act court may order all infringing items in possession of defendant be "delivered up and destroyed"). The court holds that enjoining Tesch from using any likeness of the University's tower or the University's tower marks for commercial endeavors, unless such endeavors are first authorized by the University, adequately protects the University.

---

[6] The stipulation reflects the University has a license agreement with H2Orange, LLC for University tower water bottles with royalty rate of 8%, as well as guaranteed minimum annual royalties of $250,000 for each of the first two years and $500,000 for every year following. The Collegiate Licensing Company represents that the University's standard royalty rate is 10%. Additionally, corporate sponsorship programs are available for affiliation with the University, including the use of certain trademarks, and range from $50,000 to $1,000,000 per year.

### *Attorney's fees*

The University, as the prevailing party, contends that under the Lanham Act this is an "exceptional case," and the court should order that the University recover reasonable attorney's fees from Tesch. *See* 15 U.S.C. § 1117(a) (court may award prevailing party reasonable attorney's fees in trademark-infringement action in *exceptional cases*). The prevailing party bears the burden of demonstrating the exceptional nature of the case by clear-and-convincing evidence. *Board of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 491 (5th Cir. 2008). Clear-and-convincing evidence is more than a preponderance of the evidence. "'Preponderance' means that it is more likely than not. 'Clear and convincing' is a higher standard and requires a high probability of success. *In re: Briscoe Enters., Ltd., II*, 994 F.2d 1160, 1164 (5th Cir. 1993) (internal citations omitted). The standard "usually employs some combination of the words clear, cogent, unequivocal, and convincing." *Id.* (internal quotations and citations omitted.)

The evidence reflects that Tesch copied the University tower and used images of the tower in the car wash's logo, advertising, and merchandising to take advantage of the goodwill developed by the University. Tesch adopted the infringing marks intending to derive a benefit from the University's goodwill.

Robert Tesch, an alumnus of the University, constructed the tower replica to "pay homage to the University," which he hoped would cause people "to think about UT." The tower replica would make them "feel good." There is undisputed summary-judgment proof that the car wash adopted its marks with the intent of deriving a benefit from the University's goodwill. Further, it is undisputed that the car wash was developed to take advantage of the University's brand and goodwill. At least one person approached Tesch and asked if he had obtained permission for the

University to operate the car wash. Tesch handed out orange Tower Car Wash business cards–burnt orange being the color traditionally associated with the University and its athletics teams–with the 2010 University of Texas football schedule on the back of the cards. The architect of the car wash, Trent Clark, stated that Tesch requested "a tower on my building that looks like the [University] Tower." The lighting consultant for the car wash, Shawna Sieck, stated that Tesch explained, "he was going to do a car wash and then have the UT Tower on it so you can see the top of it from [U.S. Highway 183A]," a heavily traveled roadway near the car wash. Tesch told Sieck that he had obtained approval from [the University] to build the tower replica and operate the car wash. The designer of the car-wash logo, Felipe Cruz, explained that the "T" in the logo is the University tower.

Tesch directs the court to other proof in the record, including that Tesch included disclaimers *after receiving the University's demand letter*. Further, although the capability exists for the tower replica to be lighted orange, similar to the University tower, Tesch determined he would not do so. He stated that he instructed Clark to not violate trademarks. But the University's requests to delay opening the car wash were refused, because Tesch "couldn't justify delaying it due to the cost of delaying it." Also, Tesch informs the court that the car wash was modified within four months of opening and further modifications to the tower replica are proposed.

Generally, "[a]n exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate, or willful." *Smack Apparel Co.*, 550 F.3d at 491 (internal citation omitted). The evidence before the court–both the summary-judgment proof and the post-summary-judgment stipulation of the parties–does not support a conclusion that Tesch's infringement was malicious or fraudulent.

8

However, consistent Fifth Circuit precedent holds that where an infringer's actions can be characterized as willful or deliberate, the exceptional-case standard may be satisfied. *E.g., id.*; *Seatrax*, 200 F.3d at 373 (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co.*, 112 F.3d 1296, 1305 (5th Cir. 1992)); *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 555 (5th Cir. 1998) (quoting *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996)); *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 696-97 (5th Cir. 1992).

But what the circuit giveth with one hand, it appears to taketh away with the other. Willful or deliberate conduct seems not to be enough. In *Texas Pig Stands, Inc.*, the circuit reversed a trial-court conclusion that a case was exceptional. Referring to the Lanham Act's legislative history, the court first indicated that an exceptional case may be found where an infringer's actions may be characterized as, *inter alia*, deliberate or willful. 951 F.2d at 696-97 (internal quotations and citations omitted). The court then observed, however, that the exceptional-case provision has been interpreted to require a "high degree of culpability on the part of the infringer, for example, bad faith or fraud." *Id.* at 697 (internal citations omitted). The court went on to note with approval cases where economic damages played an important role, *id.* n.23, and where "very egregious conduct" was required to establish an exceptional case, *id.* n.25. The court discredited a definition of willful that provided "[a]n act is done 'willfully' if it is done voluntarily and intentionally and not because of accident or other innocent reason," holding "[t]his standard falls short of the kind of culpability required to render a case 'exceptional.'" *Id.* at 697.

Deliberate or willful conduct is not reached and an exceptional case is not established by simple infringement. The law compels more. "The necessary showing demands a 'high degree of culpability on the part of the infringer, for example bad faith or fraud.'" *Smack Apparel Co.*, 550

F.3d at 491 (citing *Pebble Beach Co.*, 155 F.3d at 556); *see also, Seatrax*, 200 F.3d at 373. In *Smack Apparel Co.*, the court reiterated that "deliberate copying does not render a case per se exceptional," because of the infringer's belief that, based on a settlement in another case, the infringer could act as he did. 550 F.3d at 491. The record here reflects no evidence of mistake by Tesch. But *Smack Apparel Co.* ranges far in restricting what constitutes an exceptional case. "[A]n actor's bad faith in violating the Lanham Act does not per se equate to malicious, fraudulent or willful conduct . . . ." *Id.*

It is difficult to reconcile these statements regarding the role of bad faith in establishing deliberateness or willfulness on the part of an infringer. Courts struggle here. On the one hand, *Smack Apparel Co.* instructs that an infringer who acts in bad faith has the requisite degree of culpability to establish that the infringer acted willfully, thus establishing that the case is exceptional. On the other hand, *Smack Apparel Co.* says that the infringer's bad faith is not the same as willful conduct. This court resolves the seeming conflict by looking at the larger inquiry. "The prevailing plaintiff must show a high degree of culpability by the defendant. We have used 'bad faith' as a short-hand for conducting this inquiry, but we also have instructed district courts to consider all the facts and circumstances to determine whether a case is exceptional." *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 527 (5th Cir. 2002) (quoting *Texas Pig Stands, Inc.*, 951 F.2d at 697; *Pebble Beach Co.*, 155 F.3d at 556)) (internal quotations and citations omitted).[7]

---

[7] As the Fifth Circuit noted in *Texas Pig Stands, Inc.*, "We do not attempt to draw a bright line determination for what conduct constitutes an 'exceptional' case for all circumstances and situations; we hold only that the facts before us today do not reach the 'exceptional' level." 951 F.2d 684, 697 n. 25.

A review and analysis of all the facts and circumstances of this case through the prism of the clear-and-convincing standard of evidence reveals this case to be less than exceptional. Tesch is not in direct competition with the University. Said another way, the University does not operate a car wash. Tesch has not been enriched by revenues that otherwise would have gone to a University-operated business. This is a simple case of infringement–Tesch identified himself with the University and trafficked on the University's marks and goodwill. The injury to the University is presumptive. A reasonably royalty, reflecting what the University would have received had it licensed Tesch to use the University's marks, is the only rational measure of damages. Tesch's conduct, although in violation of the Lanham Act, cannot be characterized as egregious. Regardless of what the University would make it, this is garden-variety infringement, no more.

The court concludes the University has not proved by clear-and-convincing evidence exceptional circumstances justifying an award of attorney's fees. *See* 15 U.S.C. § 1117(a). The court denies the University's request for attorney's fees.

### *Costs*

Finally, the University requests that the court award the University its costs of court. The University is the prevailing party and entitled to recover costs from Tesch. *See* Fed. R. Civ. P. 54(d)(1).

## CONCLUSION

As nothing remains in this action for the court to resolve, the court renders the following final judgment pursuant to Federal Rule of Civil Procedure 58. The court brings forward and makes a part of this final judgment its May 17, 2012 Order Granting Motion for Summary Judgment (Clerk's Document No. 43).

11

**IT IS ORDERED** that final judgment is rendered in favor of Plaintiff Board of Regents, The University of Texas System and against Defendants Tower Car Wash, Inc., d/b/a Tower Express Car Wash, and Tesch & Associates, Inc., and Robert E. Tesch.

**IT IS FURTHER ORDERED** that Defendants Tower Car Wash, Inc., d/b/a Tower Express Car Wash, and Tesch & Associates, Inc., and Robert E. Tesch, their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, are **ENJOINED AND RESTRAINED** from using a University tower replica, a logo depicting the University tower, an orange lighting scheme in or on any new logo, tower structure, or depiction and any other mark or tower structure or depiction that is confusingly similar to or likely to cause dilution of the University's tower, or the University's tower marks, and from any attempt to retain any part of the goodwill misappropriated from the University.

**IT IS FURTHER ORDERED** that Plaintiff Board of Regents, The University of Texas System shall recover from Defendants Tower Car Wash, Inc., d/b/a Tower Express Car Wash, Robert E. Tesch, and Tesch & Associates, Inc., jointly and severally, the amount of $68,285.59 as a reasonable royalty for Defendants' past acts of infringement, which represents an 8% royalty of Defendants' gross sales for the time period of December 1, 2010 through June 25, 2012. *See* 15 U.S.C. § 1117(a).

**IT IS FURTHER ORDERED** that Plaintiff Board of Regents, The University of Texas System recover postjudgment interest from Defendants Tower Car Wash, Inc., d/b/a Tower Express Car Wash, and Tesch & Associates, Inc., and Robert E. Tesch, jointly and severally, on the above amount at a rate of 0.13% percent *per annum* from the date this judgment is signed until paid in full. *See* 28 U.S.C. § 1961.

12

**IT IS FURTHER ORDERED** that Plaintiff Board of Regents, The University of Texas System, as the prevailing party in this action, recover costs of court from Defendants Tower Car Wash, Inc., d/b/a Tower Express Car Wash, and Tesch & Associates, Inc., and Robert E. Tesch jointly and severally.

**IT IS FURTHER ORDERED** that all relief requested by any party hereto not specifically granted herein is **DENIED**.

**IT IS FINALLY ORDERED** that the case is hereby **CLOSED**.

SIGNED this ___ day of January, 2014.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE

13